## APPEAL OF UNIOLA REAL ESTATE CO.

Docket No. 3457.    Submitted December 28, 1925.    Decided March 31, 1926.

> A reasonable deduction of the compensation of the taxpayer's president for the year 1921, *held*, upon the record of this appeal, to be the amount of $12,000.

*Franklin C. Parks, Esq.*, for the taxpayer.
*George G. Witter, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

FINDINGS OF FACT.

1. The taxpayer is a Louisiana corporation with its principal place of business at New Orleans. It was engaged in the business of buying and selling real estate and collecting rents from its properties. The outstanding capital stock consisted of 500 shares, of which 374 shares were owned by E. Perrin, Sr., as president. The remainder of the stock was owned by members of the Perrin family.

2. For 1921 the taxpayer claimed deductions for compensation to the said E. Perrin, Sr., as follows:

| | |
|---|---|
| Salary | $6,000.00 |
| 5 per cent on rents collected | 3,259.30 |
| 3 per cent on purchase and sale of property | 18,558.00 |
| Total | 27,817.30 |

The Commissioner allowed the $6,000 as salary, but refused to allow the balance of $21,817.30.

3. The circumstances surrounding additional compensation so claimed were as follows:

On or about April 5, 1921, the board of directors of the taxpayer passed the following resolution:

*Be it resolved* that in view of the great increase in the business of this corporation and the prosperous condition of the corporation that the President, Emilien Perrin, be voted a salary of Six Thousand ($6,000.00) dollars per annum for the active management of this corporation in addition to a salary equal to 3% on the purchase or sales of real estate and 5% on rent collections.

The said E. Perrin, Sr., was also a licensed real-estate broker and engaged in the buying and selling of real estate for clients. He also conducted three other corporations. No entries were put upon the books putting into effect the above resolution until the closing entries of the taxable year, at which time taxpayer entered in its journal the following entries:

| | | |
|---|---|---|
| Expense to Emilien Perrin | 101 | $3,259.30 |
| For 5% bonus additional salary on total amount of all rents collected and accrued during the year of 1921 as per resolution dated April 5th, 1921 | 33 | 3,259.30 |
| Expense to Emilien Perrin | 101 | 18,558.00 |
| For bonus additional salary equal to 3% on amounts of purchases and sales of various properties listed below as per resolution of April 5th, 1921: | | |
| #811 Iberville Street | | 18,000.00 |
| Waveland property | | 3,800.00 |
| #539 Bienville Street | | 13,000.00 |
| #901-9 Poydras Street | | [96,000.00] purchase. |
| #901-9 Poydras Street | | [106,500.00] sale. |
| #901-9 Poydras Street | | [103,000.00] repurchase. |
| #229 Dryades | | 7,000.00 |
| #1324-32 Gravier Street | | 10,000.00 |
| Broad Street bldg. site | | 3,175.09 |

#918–20 St. Louis Street_____ [$22, 500.00]
#1320 St. Andrew Street_____ [20, 000. 00 purchase.]
#1320 St. Andrew Street_____ [15, 000. 00 sale.]
#745 Baronne Street
#745 Baronne Street
#801 Baronne Street_____ [10, 600. 00 purchase.]
#801 Baronne Street_____ [20, 600. 00 sale.]
#2042–4 Magazine Street_____ [12, 000. 00]
#425 Gravier Street_____ [18, 375. 00]
Perdido and Dryadas Street_____ [70, 000. 00]

Words and figures in the foregoing tabulation which are here shown in brackets appear upon the taxpayer's journal in lead pencil.

In 11 of the above sales the taxpayer paid commissions to other brokers for effecting the sales, in addition to the commission claimed by the president of the taxpayer. For the prior year 1920 the taxpayer claimed $1,500 as compensation to its president.

The taxpayer, in its income and profits-tax return for 1921, reported gross income from sales of real estate in the amount of $41,-930.08, and gross income from rents received in the amount of $26,-904.35. In the same return it also reported compensation of officers, E. Perrin, Sr., $4,000; S. F. Perrin, $4,300; and in the general expense account it reported an item of other salaries, $2,500. In the schedule attached to the return, and in connection with the figures respecting one of the real-estate sales, it is shown that a commission was paid thereon in the amount of $3,210.97, and in the schedule of general expenses there is an item of commission in the amount of $2,376.50. The total gross income is stated as $68,832.43, and the net income as $6,000.93, upon which the taxpayer computed a tax of $400.09.

### OPINION.

TRUSSELL: The record of this appeal contains testimony to the effect that the customary charges, or commissions, for the collection of rents in the City of New Orleans in 1921 was 5 per cent of the rents collected, and that usual commissions upon sales of real estate were approximately 3 per cent of the sale prices. In this connection, however, it will be observed that the taxpayer is claiming a deduction for commissions upon rents collected in the amount of $3,259.30, and reporting gross income from rents in the amount of $26,904.35. Five per cent upon the gross rent collection does not equal the amount of commissions claimed as a deduction. It is also observed that the total of all the figures of purchase and selling prices of real estate transactions described is not such an amount that 3 per cent thereof will equal the $18,558 claimed as a deduction for commissions thereon. It must further be observed that, although a reso-

lution of the taxpayer's board of directors authorizing compensation of officers fixed the executive salary of the president at $6,000, in making its original income-tax return it only claimed $4,000 as compensation paid to such officer.

Upon the record as herein shown it appears that the question for our determination is not what the corporation authorized to be paid to its president, or what amount was actually paid to him, but what is the reasonable compensation which the law authorizes the taxpayer to take as a deduction. The gross income of the taxpayer for the year was $68,832.43. It paid to one of its officers, a son of the president, a salary of $4,200. It appears to have paid $2,500 to other persons employed by it. The president owned more than two-thirds of the stock of the taxpayer corporation. He appears to have been its principal managing and directing head, and to a considerable extent his activities produced the gains and profits which made up its gross income. We are of the opinion that a reasonable compensation for his services, under the circumstances disclosed by the record, is the amount of $12,000 for the year 1921, and that the taxpayer's net income should be readjusted upon that basis.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*